Argued and submitted December 11, 1980, affirmed April 13,
reconsideration denied June 4,
petition for review denied June 30, 1981 (291 Or 151)

## FITZPATRICK et al,
*Appellants,*

*v.*

## ROBBINS et al,
*Respondents.*

### (No. 78-2503, CA 16487)

626 P2d 910

Michael F. Fox, Eugene, argued the cause for appellants. With him on the briefs was Hoffman, Morris, Van Rysselbergh & Giustina, Eugene.

William F. Frye, Eugene, argued the cause for respondents. With him on the brief was Frye & Smith, Eugene.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

Action for forcible entry and detainer.

Plaintiffs appeal from a judgment entered on a verdict in favor of defendants on their counterclaim and awarding them $12,500 general damages and $12,500 punitive damages for plaintiffs' outrageous conduct in attempting to evict defendants from the trailer park which plaintiffs partially owned and managed. Plaintiffs contend on appeal that submission of the cause to the jury was logically inconsistent with the directed verdict for plaintiffs entered on their supplemental complaint for unpaid rent (filed after defendants moved out) and that, in any event, plaintiffs' conduct did not invade those interests which the tort of outrageous conduct is designed to protect, nor was it sufficiently egregious to justify a finding of tortiousness. Plaintiffs also assign error to the admission of testimony and the giving of an instruction regarding whether defendants were coerced or misled into signing the written lease.

The case went to trial on plaintiffs' supplemental complaint. The court directed a verdict in plaintiffs' favor on their claim for unpaid rent. Defendants' counterclaim was submitted to the jury, which returned a verdict for defendants and awarded $12,500 general and $12,500 punitive damages. Plaintiffs moved for a judgment notwithstanding the verdict or for a new trial. The motion was denied. Plaintiffs appeal.

With respect to the first assignment of error — that granting of the directed verdict on the claim for unpaid rent was inconsistent with submission of the counterclaim for outrageous conduct to the jury — plaintiffs argue as follows: The law governing plaintiffs' right to evict defendants for alleged violation of the park landscaping rule requires that the rule must have been existing, valid and duly imposed as a condition of occupancy. ORS 91.780. The court implicitly found that the rules were in effect and that defendants breached those rules. The court necessarily found that plaintiffs acted in good faith in attempting to get defendants to change the landscaping and in evicting them. ORS 91.730. Therefore, entry of judgment on the verdict finding outrageous conduct contradicted the implicit finding of good faith and justification.

■ The flaw in plaintiffs' argument is that it presupposes that, in awarding plaintiffs the rent owed for occupancy between the giving of the notice to quit (July 6, 1977) until the date defendants moved out (September, 1978), the trial court necessarily decided that plaintiffs had the right to evict defendants for violation of the landscaping rule. That is not the case. The trial court merely gave plaintiffs their due because a tenant who continues to reside in the landlord's dwelling despite notice to quit and the filing of an FED action remains liable for the rent. If the court finds that the landlord's attempted eviction was well-founded, the rental agreement is terminated and the tenant is liable as a holdover for reasonable rent. *See* ORS 91.855(3); 91.740(3),(4). If the court finds the attempted eviction to be unjustified, the tenant is liable for rent under the rental agreement which remains in effect. Thus, it does not follow that the court, in finding defendants liable for rent, necessarily made any determination with respect to the underlying justification for the eviction.

We now address plaintiffs' third and fourth assignments of error, which relate to the admission of evidence and giving of a jury instruction[1] on the matter of whether defendants were coerced or misled into signing the February, 1977, rental agreement. Plaintiffs maintain that the evidence and instruction thereon are irrelevant, prejudicial and outside the scope of the pleadings. We consider these assignments out of order because, if plaintiffs' contentions are correct, the error would constitute grounds for reversal and we would not reach plaintiffs' second assignment of error.

The rules regarding pets and landscaping are central to this dispute. Defendants' counterclaim alleged that plaintiffs:

---

[1] The challenged instruction reads:

"Insofar as whether the defendants, when they signed the written rental agreement on February 8, 1977 intended to be thereafter bound by any rule regarding pets or landscaping, you are instructed to decide whether defendants voluntarily signed the rental agreement with knowledge that it would carry with it the new rule changes or whether they signed the agreement because they were coerced by plaintiffs or misled into thinking that they were subject to eviction if they did not sign."

"(a)   Demanded that defendants get rid of the dog they had acquired to replace one that had just died and led defendants to believe that their failure to comply would be cause for eviction, when in fact *there was no rule which would subject defendants to eviction for keeping their dog;*

"(b)   Demanded that defendants remove at their expense all the bark dust and sand which defendants had used in landscaping their yard and led defendants to believe that their failure to comply would be cause for eviction, when in fact defendants' landscaping was becoming and enhanced the appearance of their space and *was not carried out contrary to any rule which would subject them to eviction."* (Emphasis supplied.)

Plainly, these allegations call into question the validity of the two rules. Oregon law authorizes a landlord to establish rules for tenants as a condition of occupancy, but only when certain criteria are met. ORS 91.780(1).[2] Among these criteria are the requirements that a rule apply fairly to all tenants, that it be sufficiently explicit and that the tenants have notice of it. If the rule is altered after a tenant goes into possession, it is not binding upon him absent written consent if it substantially modifies his bargain. ORS 91.780(2).[3]

---

[2] ORS 91.780(1) reads:

"A landlord, from time to time, may adopt a rule or regulation, however described, concerning the tenant's use and occupancy of the premises. It is enforceable against the tenant only if:

"(a) Its purpose is to promote the convenience, safety or welfare of the tenants in the premises, preserve the landlord's property from abusive use, or make a fair distribution of services and facilities held out for the tenants generally;

"(b) It is reasonably related to the purpose for which it is adopted;

"(c) It applies to all tenants in the premises in a fair manner;

"(d) It is sufficiently explicit in its prohibition, direction or limitation of the tenant's conduct to fairly inform him of what he must or must not do to comply;

"(e) It is not for the purpose of evading the obligations of the landlord; and

"(f) The tenant has notice of it at the time he enters into the rental agreement, or when it is adopted."

[3] ORS 91.780(2) provides:

"If a rule or regulation adopted after the tenant enters into the rental agreement works a substantial modification of his bargain, it is not valid unless the tenant consents to it in writing."

■ ■   In instructing the jury on the tort of outrageous conduct, the trial court correctly noted that a prime consideration is whether the alleged tortfeasor abused a position of authority. *Brewer v. Erwin,* 287 Or 435, 600 P2d 398 (1979). If the jury found that the rule changes materially altered defendants' bargain, then it became relevant whether or not defendants had consented in writing to the changes. The evidence of what transpired at the time defendants signed the written lease was therefore admissible on the issue of consent. We further hold that issue was raised by the pleadings quoted above. Since consent was an issue, it was not necessary for defendants to have specifically alleged that their signatures on the rental agreement were procured by mistake or duress.

■   The challenged instruction was given in the context of the total instructions on outrageous conduct and immediately followed the instruction on the criteria for imposing conditions of occupancy. Since the FED action was moot, it was not necessary for the jury to decide that the rules applied to defendants and justified eviction in order to entitle plaintiffs to rent for the period of disputed occupancy. If however, the rules sought to be enforced were invalid as applied to defendants, then plaintiffs' conduct would take on an egregious quality. The instruction was proper in this case.

■   To recover for intentional infliction of mental distress (outrageous conduct), defendants must show that plaintiffs' conduct was deliberately aimed at harassing and distressing defendants and exceeded the level of offensive conduct that a person should be expected to endure under contemporary societal standards. *Brewer v. Erwin, supra.* Two factors of importance in evaluating plaintiffs' actions are material here: 1) the fact that plaintiffs, as landlords, were in a position of authority with respect to defendants and could affect their interest in the quiet enjoyment of their leasehold; 1 Restatement (Second) of Torts § 46, Comment (1965); *Turman v. Central Billing Bureau,* 279 Or 443, 446, 568 P2d 1382 (1977); and 2) defendants' age and visible disabilities, which the jury might have found rendered them particularly susceptible to threats of eviction, particularly in conjunction with the scarcity of comparable accomodations in the vicinity. *Turman v. Central*

*Billing Bureau, supra,* 279 Or at 445. The nature of the inquiry — whether alleged conduct exceeds socially tolerable norms — is particularly suited to jury determination, and courts are necessarily reluctant to foreclose that determination as a matter of law. The language of our Supreme Court in *Brewer* is apropos:

> "* * * As we have said, the issue here is not whether the course of events and the inferences of defendants' motives were as plaintiff claims. The jury might well believe defendants' version of these facts. It might conclude that plaintiff and her witnesses perceived as persecution what was only the rudeness of a frustrated property owner faced with a stubborn occupant and provoked even to the point of the battery for which the jury awarded plaintiff damages. But the jury might also believe, to the contrary, that the individual defendants' course of conduct was designed deliberately to cause plaintiff such distress that she would abandon the apartment without putting up prolonged resistance through drawn-out legal proceedings * * *." 287 Or at 460.

Under the evidence presented, the jury could have found that plaintiffs undertook to harass defendants into surrendering their leasehold. The jury could have found from the evidence presented: 1) that defendants were coerced or misled into signing a rental agreement approving rule changes of which they were unaware at the time and which they may not have been obliged to accept; 2) that plaintiffs acted callously in threatening eviction if defendants did not get rid of their new dog during a period when defendants were mourning the death of their daughter and first dog; 3) that plaintiffs falsified the rental agreement to include a landscaping rule (75% grass) which did not necessarily follow from the written rule; 4) that plaintiffs singled defendants out among the tenants who were in violation of the landscaping rules as interpreted by plaintiffs; 5) that plaintiffs wilfully waited until the landscape work was underway before objecting to it and defendants' purported failure to obtain prior approval and then demanded the area be returned to its prior state while refusing to compromise; 6) that plaintiffs referred to "complaints" they had received from neighbors concerning defendants' landscaping and drainage situation which they had not in fact

received; 7) that plaintiff-husband publicly accosted defendant-husband and berated him for distributing a tenant organization newsletter; 8) that plaintiffs refused to inform defendants why their rent payments were not accepted, knowing that they feared eviction for nonpayment of rent; 9) that plaintiffs unreasonably required that the space be returned to its exact prior condition before they would allow defendants to sell their mobile home after moving out; and 10) that plaintiffs conduct in general was needlessly abusive.

We now turn to plaintiffs' specific contentions with respect to their second assignment of error — (a) that "the evidence did not demonstrate an invasion of those societal interests" protected by the tort law and (b) in any event, plaintiffs' conduct was "below the threshold of tortiousness." It is not clear from plaintiffs' argument just what "societal interests" they believe are the only ones protected by the tort; the only reference in their brief is to a person's interest in "peace of mind" (citing *Rockhill v. Pollard,* 259 Or 54, 63, 485 P2d 28 (1971)). Clearly, the evidence here supports a conclusion that defendants' peace of mind was disrupted. If plaintiffs intend to argue that a residential tenant's interest in the peaceful enjoyment of his leasehold is not protected, the authority is to the contrary and we reject that contention. *Brewer v. Erwin, supra.*

As for plaintiffs' second contention, we conclude there was ample evidence from which the jury could have found plaintiffs acted beyond the bounds of societally tolerable conduct in attempting to evict defendants and the verdict should be affirmed.

Affirmed.