Argued and submitted July 17, affirmed December 9, 1987

ELDRIDGE,
*Appellant,*

*v.*

EASTMORELAND GENERAL HOSPITAL et al,
*Defendants,*

*and*

LASZLO,
*Respondent.*

(A8402-01027; CA A41654)

746 P2d 735

Deborah L. Le Meitour, Portland, argued the cause and filed the briefs for appellant.

Emil Berg, Portland, argued the cause for respondent. With him on the brief was Hallmark, Griffith & Keating, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Plaintiff appeals the trial court's dismissal of this wrongful death action on Statute of Limitations grounds. We affirm.

Plaintiff is the personal representative of the estate of the deceased, Renee Eldridge. The fifth amended complaint alleges that on May 9, 1981, the day of decedent's birth, defendant Laszlo and another physician, acting as agents of Eastmoreland General Hospital, were negligent in the placement of an endotracheal tube in decedent's esophagus, which caused her death in September, 1981. Plaintiff then alleges:

> "[P]laintiff reasonably believed Renee Eldridge's problems were caused by prenatal care and treatment and care and treatment during labor and delivery and further reasonably believed the University of Oregon Health Sciences Center records would only disclose the damage thus caused to the child.
>
> "* * * * *
>
> "That neither the Eastmoreland General Hospital records for Michelle Eldridge nor the Eastmoreland General Hospital records for Renee Eldridge contained information regarding the improper intubation and inadequate postnatal resuscitative efforts of Renee Eldridge.
>
> "* * * * *
>
> "That plaintiff did not discover and could not reasonably discover the negligence and improper intubation by defendants until April 3, 1984, when plaintiff obtained copies of the University of Oregon Health Sciences Center transport records that defendants had deliberately in their charting of this case in the Eastmoreland Hospital charts concealed the fact of the improper intubation."

A wrongful death action must be commenced within three years after the occurrence of the injury causing the death. ORS 30.020(1). The allegedly negligent treatment occurred on May 9, 1981, and plaintiff's decedent died on September 7, 1981. The complaint was originally filed against the hospital and doctors other than Laszlo on February 17, 1984. It was amended on February 28, 1986, to add him as an

550

additional defendant.[1] In *Shaughnessy v. Spray,* 55 Or App 42, 637 P2d 182 (1981), *rev den* 292 Or 589 (1982), we held that, in a wrongful death action, the limitation period commences when the plaintiff discovers or should have discovered that the harm was caused by the defendant. Discovery occurs, and the time begins to run, when the plaintiff knows, or through diligent inquiry should know, facts from which a reasonable factfinder could conclude that the injury was caused by an act of the defendant that was negligent. *Duncan v. Augter,* 62 Or App 250, 661 P2d 83, *rev den* 295 Or 122 (1983).

■■   When a complaint shows on its face that the period for bringing an action has run, the plaintiff, to avoid the bar, must plead facts sufficient to show that the delay is excused. The question here is whether, taking the facts pleaded as true, the complaint shows that plaintiff could not, through diligent inquiry, have learned that defendant negligently caused the injury until April, 1984. Because the demurrer was sustained, the complaint must be construed most strongly against the pleader. *Consolidated Freightways v. Eddy,* 266 Or 385, 513 P2d 1161 (1973). We presume that plaintiff has stated her cause of action as favorably as possible. *State ex rel Cox v. Wolfe,* 25 Or App 551, 549 P2d 1281 (1976).

■   Plaintiff would have us conclude that the allegations of her complaint sufficiently establish that she did not know, nor could she have known, facts from which a reasonable person could find that Laszlo was negligent before April, 1984. She contends that the relevant time for purposes of the Statute of Limitations was when she obtained copies of the Oregon Health Sciences University records in which Laszlo's negligence was disclosed. The complaint does not allege, however, that she was unaware of the existence of the records before that time. The contrary is, in fact, implicit in her allegation that she believed that the records would disclose only negligence in the prenatal care and delivery of her child. Had she examined the records which she believed contained some information relevant to a claim which she knew she had, she would have discovered the claim against Laszlo. A reasonably

---

[1] The claims against the other defendants have been dismissed. Plaintiff appeals only the dismissal of the claim against Laszlo, the doctor who performed the intubation.

diligent person with the belief that certain records were relevant to her theory of the case would have, at the least, tried to obtain the records or otherwise discover the information contained in them. Plaintiff does not allege that she was unaware of the records, that they were unavailable or that they were otherwise secreted from her. In fact, she affirmatively alleges that she believed they contained information relevant to the claim she had already made. That is not an excuse for failure to discover their contents but a reason why their contents should have been discovered. In *Peterson v. Mult. Co. Sch. Dist. No. 1,* 64 Or App 81, 668 P2d 385, *rev den* 295 Or 773 (1983), relied on by the dissent, plaintiff did not know that OSAA had any information relevant to any part of his injury claim. The complaint here fails to establish that a reasonably diligent person could not have discovered defendant's negligence until April, 1984.

Affirmed.

**ROSSMAN, J.,** dissenting.

The majority concludes that the allegations in the complaint are insufficient to establish that a reasonably diligent person could not have discovered defendant Laszlo's negligence until April, 1984. It strikes down the complaint because of the lack of allegations that plaintiff was unaware of the Oregon Health Sciences University (OHSU) transport records, that they were unavailable or that they were otherwise secreted from her. I believe that the majority expects too much from this plaintiff. The complaint needs only to allege facts sufficient to raise a question of fact as to whether plaintiff, in the exercise of reasonable care, should have discovered the existence of her cause of action against Dr. Laszlo before April, 1984. By requiring that plaintiff in essence must allege facts showing that it was impossible for her to discover defendant's negligence sooner, the majority virtually nullifies the discovery rule. Therefore, I respectfully dissent.

This is the essence of the majority's reasoning: Plaintiff knew that she had a claim against the hospital and others (not including Laszlo) for their negligence in connection with prenatal care and delivery; she was aware that certain OHSU records existed and might contain information relating to that obstetrical negligence; she did not know that she had a claim against Laszlo for the negligent intubation of the deceased

child or that OHSU's records would reveal such a claim; however, because she knew that the records existed, she was not duly diligent as a matter of law because she did not examine the records and thereby discover her claim against Laszlo.

I have several difficulties with that reasoning. In the first place, nothing in the fifth amended complaint says *when* plaintiff *knew* that OHSU's records *existed*. Paragraph 10 of the complaint says that she *obtained* them on April 3, 1984, which was less than three years before she first named Laszlo as a defendant. The majority nevertheless says:

"The complaint does not allege, however, that she was unaware of the existence of the records before that time. The contrary is, in fact, implicit in her allegation that she believed that the records would disclose only negligence in the prenatal care and delivery of her child." 88 Or App 547 at 550.

I find that unpersuasive. Plaintiff's allegation that she thought the OHSU records would relate only to her claim for negligent obstetrical care does not, on its face, have any bearing on when she became aware that there were such records. If she was required to plead anything about the temporal connection between her and the records, she did: she alleges she obtained them less than three years before she added Laszlo as a defendant. That was enough to get her past the motion to dismiss.

My second problem is that, even if the majority were correct in its understanding that the complaint affirmatively shows that plaintiff knew about the records more than three years before she named Laszlo, I disagree with its legal analysis.

Granting a motion to dismiss in this type of case is appropriate only when, taking the facts pleaded as true, the face of the complaint shows that, as a matter of law, the limitation period has run. As the majority observes, in a wrongful death action the limitation period commences when the plaintiff discovers or should have discovered that the harm was caused by the defendant. *Shaughnessy v. Spray*, 55 Or App 42, 637 P2d 182 (1981), *rev den* 292 Or 589 (1982). A plaintiff has discovered a cause of action—thereby triggering the running of ORS 30.020—when she knows or should know, through diligent inquiry, facts from which a reasonable factfinder could conclude that the injury was caused by an act of

the defendant that was somehow negligent. *Duncan v. Augter,* 62 Or App 250, 661 P2d 83, *rev den* 295 Or 122 (1983). Thus, the question in this case is simply whether, taking the facts pleaded as true, the complaint shows that, in the exercise of reasonable diligence, plaintiff should have discovered before April, 1984, that defendant negligently caused the injury.

Plaintiff alleges that she reasonably believed that her child's problems were caused by prenatal care and treatment and care and treatment during labor and delivery and that the OHSU records "would only disclose the damages thus caused to the child" and thus—inferentially—would not reveal information pertinent to her claim against Laszlo for negligence in the intubation procedure. Plaintiff also alleges that Eastmoreland General Hospital's records involving her and her child did not disclose the improper intubation, because defendant deliberately concealed it in the charting. It is implicit in plaintiff's averments that she would have discovered Laszlo's involvement in the improper intubation in her review of the hospital records, had it not been secreted from her. Finally, plaintiff alleges that, as a result of the concealment, she did not reasonably discover Laszlo's negligent intubation until she obtained the sharply contrasting OHSU records in April, 1984.

Granted, plaintiff does not allege that the OHSU records were secreted from her, but she does allege that the defendant purposefully concealed the fact of improper intubation in the charting of the case in the Eastmoreland General Hospital records. That allegation in turn permits an inference that defendant steered her away from any inquiry into other sources of information and in particular OHSU records, which might have apprised her of the injurious procedure and his negligence. I believe that the facts alleged are sufficient to support an inference that plaintiff was not aware of defendant's involvement with and treatment of the child until she reviewed the OHSU records and that, because of defendant's concealment of the improper intubation, a reasonably diligent inquiry about prenatal care and delivery would not have included a review of those records. Accordingly, I would hold that plaintiff's allegations are sufficient to show that her delay can be excused. That is, application of the Statute of Limitations is a jury issue.

Even though the facts known would cause a reasonable person to attempt to determine the nature or cause of an injury, if for some reason those facts and the results of reasonable inquiry taken together do not or should not reveal the injury or the causal connection to defendant's negligent conduct, there is no discovery and the statute does not begin to run. *See Frohs v. Greene,* 253 Or 1, 452 P2d 564 (1969) (involving medical malpractice and applying ORS 12.110(4)). Until the tort is or should be discovered, *i.e.,* until a plaintiff realizes that (1) she has been injured, (2) the injury *can be attributed to an act of the alleged tortfeasor* and (3) the act of the alleged tortfeasor was somehow negligent, the statute does not commence to run. *Hoffman v. Rockey,* 55 Or App 658, 663, 639 P2d 1284 (1982). We also said in *Hoffman,* quoting with approval our earlier statement in *Melgard v. Hanna,* 45 Or App 133, 136, 607 P2d 795 (1980):

> " '[ORS 12.110(1)] does not commence to run until the occurence of the harm and until such time as it appears reasonably probable that the damage complained of was caused by the *negligence of defendants and not by some other cause.*' " 55 Or App at 663. (Emphasis added.)

In *Peterson v. Multnomah County School District No. 1,* 64 Or App 81, 668 P2d 385, *rev den* 295 Or 773 (1983), the plaintiff was injured in a high school football practice scrimmage. The question was whether the plaintiff should have discovered his claim against OSAA for its failure to disseminate certain athletic safety information because, long before he did discover that OSAA normally did distribute safety information but had failed to do so in ways pertinent to his injury, he was aware that OSAA performed a regulatory role in connection with school sports. We said:

> "Nothing plaintiff * * * knew about OSAA before [his discovery of the safety recommendations] could have made him aware that OSAA had failed to require or recommend that the National Federation recommendations be followed or, contrary to its usual practice with medical safety information, had failed to publish or inform member schools of the substance of the recommendations." 64 Or App at 87.

We also said, in distinguishing *Duncan v. Augter, supra:*

> "The surgery [in *Duncan*] was a discrete event, and we held that the plaintiff should have known that she had a cause of action against the defendant before she became aware of all

the ways in which he was negligent. Here OSAA's role was not unitary; its regulatory role was a separate activity from its publication and mailing of safety information." 64 Or App at 88.

The majority's effort to distinguish this case from *Peterson* does not succeed. In both cases, the plaintiffs knew *something* about a party or a source of information; however, in both cases, what the plaintiffs *in fact knew* was unrelated to the claims about which there was a Statute of Limitations controversy. Also, in both cases, the defendants' activities giving rise to the unknown claims were wholly distinct from the activities of the defendants of which the plaintiffs were aware. In sum, the key similarity between this case and *Peterson* is that the facts that the plaintiffs knew had no connection with the claims which the defendants said that the plaintiffs brought belatedly and a trier of fact could find that the known facts did not put the plaintiffs on inquiry that an unknown claim was lurking behind them.

The most significant difference between this case and *Peterson* is that the Statute of Limitations issue there involved only one defendant, OSAA, which played two distinct and unrelated roles in connection with high school football. In this case, there are not only distinct acts; the defendants who performed those acts are also distinct. The only negligence that plaintiff alleges against Laszlo involves the intubation procedure, an activity which had no relationship to the obstetrical negligence alleged against other defendants in her earlier complaints. For that reason, this is as strong a case as *Peterson* for holding as we did there that it is a jury question whether plaintiff should have discovered her claim through the exercise of diligent inquiry. Weak as OSAA's contention that one who knew anything about it should have known everything about it may have been, the majority here reaches the even more tenuous conclusion that, as a matter of law, one who believed that certain records would reveal negligent acts by certain defendants was on inquiry that the same records would reveal a different negligent act by a different and unknown defendant.