Argued and submitted October 23, 1989, reversed and remanded on the claim for intentional infliction of emotional distress; otherwise affirmed February 14, 1990

# FRANKLIN,
*Appellant,*

*v.*

# PORTLAND COMMUNITY COLLEGE et al,
*Respondents.*

(A8805-02712; CA A60225)

787 P2d 489

Michael Schumann, Portland, argued the cause for appellant. With him on the brief were Tom Steenson and Steenson and Schumann, Portland.

Gregory Chaimov, Portland, argued the cause for respondents. With him on the brief were Maureen R. Sloane and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

Riggs, J., concurring in part; dissenting in part.

## GRABER, P. J.

Plaintiff appeals a judgment dismissing his claims for intentional interference with an economic relationship and intentional infliction of emotional distress. He assigns as error that the trial court granted defendants' motions to dismiss the first amended complaint for failure to state claims. ORCP 21A(8). We affirm the dismissal of the first claim but reverse and remand on the second.

Because plaintiff refused to replead after the trial court dismissed his first amended complaint, we presume that he has stated his case as strongly as the facts permit. *Eldridge v. Eastmoreland General Hospital,* 88 Or App 547, 550, 746 P2d 735 (1987), *aff'd on other grounds* 307 Or 500, 769 P2d 775 (1989). Plaintiff, a black man, alleged that he is, and has been since 1984, "a full-time permanent employee" of defendant Portland Community College (PCC). Defendant Hankins is also a PCC employee and was plaintiff's supervisor during the relevant period. On October 17, 1985, plaintiff filed a grievance against Hankins, which was settled in February, 1986. From October 17, 1985, through January 10, 1988, Hankins engaged in "a continuing pattern of discrimination and retaliation" toward plaintiff, including these acts: issuing false reprimands, shoving him, using the racial epithet "boy," failing to recommend training, attempting to lock him in Hankins' office, and suggesting that he apply for a job at another employer. Plaintiff alleged that Hankins' conduct caused him to take time off work because of stress, resulting in his use of a total of 280.5 hours of paid sick leave.

We first consider plaintiff's claim for intentional interference with an economic relationship, which he asserted only against Hankins. To state a claim, plaintiff must allege facts that, if proven, would establish these elements:

> "Either the pursuit of an improper objective of harming plaintiff or the use of wrongful means that *in fact cause injury to plaintiff's contractual or business relationships* may give rise to a tort claim for those injuries." *Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 621, 733 P2d 430 (1987), *quoting Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 205, 582 P2d 1365 (1978). (Emphasis supplied.)

Plaintiff argues that the "lost 'sick days' constitute a tangible interference with plaintiff's employment contract resulting

from Defendant Hankins' conduct." Hankins counters that plaintiff did not "allege any injury to his employment contract," because he did not allege that Hankins' conduct even indirectly "prevented him from receiving any benefit of his contract with PCC." We agree with Hankins. Plaintiff has not pleaded the requisite injury to his economic relationship.

Plaintiff relies on *Mooney v. Johnson Cattle,* 291 Or 709, 634 P2d 1333 (1981), in arguing that he has pleaded a sufficient injury. The Supreme Court held that a plaintiff may, under appropriate circumstances, recover damages for mental or emotional distress in a claim for intentional interference with an economic relationship. 291 Or at 717-20. However, in order to obtain damages of any kind, the plaintiff must still plead and prove all elements of the tort claim, including injury to the relationship. 291 Or at 717-18. In *Mooney,* the defendants caused a third party *actually to breach its contract* with the plaintiff. 291 Or at 711.

In *American Sanitary Service v. Walker,* 276 Or 389, 554 P2d 1010 (1976), the Supreme Court stated that it is not necessary for a plaintiff to prove a breach of the contract to establish the elements of the tort. The court noted that

> "[t]he right to recover damages suffered as a result of a defendant's intentional interference with plaintiff's business interest has been recognized in this jurisdiction where defendant's wrongful actions have rendered plaintiff's obligations more onerous or prevented plaintiff from realizing the full benefit of his contract with a third party." 276 Or at 393. (Citations omitted.)

*See also Restatement (Second) Torts,* § 766A (1979). The court held that the plaintiff had stated a claim when it pleaded and proved that the defendant, a competing waste disposal service, knowingly and intentionally moved the plaintiff's collection boxes and serviced the plaintiff's exclusive franchise area, charging less than the plaintiff was permitted to charge under its franchise agreement. 276 Or at 394-95. By those actions, the defendant had "made the relationship under the contract more difficult, less valuable and less profitable for plaintiff to perform[,]" 276 Or at 394, thereby diminishing the amount that the plaintiff was to receive from customers.

Here, plaintiff did not allege that PCC breached an employment contract with him, nor did he allege that Hankins

made plaintiff's contractual obligations more onerous or prevented him from realizing the full benefit of his contract. Plaintiff alleged that Hankins' conduct caused him stress for which he had to take time off, resulting in his use of accrued sick leave. However, he did not allege that Hankins' actions or plaintiff's resulting stress and use of sick leave caused PCC to withhold or reduce any benefits of the employment contract. As far as his pleadings show, plaintiff's employment contract continued unchanged, and he received all the benefits to which he was entitled. Therefore, he did not allege an interference with his employment relationship and did not state a claim.

■  We turn to plaintiff's claim against PCC and Hankins for intentional infliction of emotional distress, which he mislabelled as a claim for "outrageous conduct." *Patton v. J. C. Penney Co.,* 301 Or 117, 119 n 1, 719 P2d 854 (1986). In order to state a claim:

> "First, ordinarily a plaintiff must allege that a defendant intended to inflict severe mental or emotional distress. It is not enough that [the defendant] intentionally acted in a way that causes such distress. Second, a defendant's act must in fact cause a plaintiff severe mental or emotional distress. Third, a defendant's actions must consist of 'some extaordinary transgression of the bounds of socially tolerable conduct' or the actions must exceed 'any reasonable limit of social toleration.' " *Patton v. J. C. Penney Co., supra,* 301 Or at 122, *quoting Hall v. The May Dept. Stores,* 292 Or 131, 135, 137, 637 P2d 126 (1981).

Plaintiff realleged the facts pleaded in his claim for intentional interference with an economic relationship. In addition, he alleged that "Hankins was an agent and employee of PCC acting within the scope of his employment."

Defendants argue that plaintiff failed to plead the elements of "intent and conduct that is an 'extraordinary transgression of the bounds of socially tolerable' behavior." With respect to intent, plaintiff responds, citing *Hall v. The May Dept. Stores, supra,* that "an employer and an employe stand in a special relationship for purposes of the tort." Therefore, he says, it was enough for him to allege that defendants acted "with a reckless disregard of the predictable effect on plaintiff." We need not address plaintiff's argument that

employment creates a special relationship that lowers the requisite level of intent, because he pleaded facts sufficient to establish that Hankins *specifically intended* to cause him severe emotional distress and that he acted within the scope of his agency for PCC in doing so.[1]

In *Palmer v. Bi-Mart Company,* 92 Or App 470, 758 P2d 888 (1988), the plaintiff brought an action against a former employer for employment discrimination, ORS 659.030, and for intentional infliction of emotional distress. We held that the plaintiff had alleged facts sufficient to support an inference that her supervisor specifically intended to harm her, by pleading that her "supervisor engaged in a course of harassment of plaintiff verbally and through notes, including notes with abusive and sexually explicit wording."[2] 92 Or App 472. Similarly, here, plaintiff alleged that "Hankins engaged in a continuing pattern of discrimination and retaliation against plaintiff" by verbally and physically harassing him several times. He also alleged that Hankins intended to "severely demean and insult plaintiff." If proven, those facts are enough to establish that Hankins had the specific intent to cause plaintiff emotional distress. The complaint need not contain the "magic words" of "specific intent," if the pleaded facts fairly permit an inference of specific intent. *See Palmer v. Bi-Mart Company, supra,* 92 Or App at 475.

---

[1] In *Sheets v. Knight,* 308 Or 220, 779 P2d 1000 (1989), the plaintiff sued a former employer for intentional infliction of emotional distress. The court held that plaintiff did not state a claim, because he did not allege that the defendant "acted with the *specific intent* to inflict severe emotional distress." 308 Or at 236. (Emphasis supplied.)

The dissent asserts that employment is a "special relationship" and that "plaintiff may prove the intent element of his claim for intentional infliction of emotional distress by showing that Hankins intentionally engaged in conduct *with reckless disregard for the consequences of his conduct on plaintiff.*" 100 Or App at 474. (Emphasis supplied.) Even as to a "special relationship," however, the dissent understates the required proof. *Hall v. The May Dept. Stores, supra,* 292 Or at 135, on which the dissent relies, held that the intent in such cases is "the intent to do the painful act *with knowledge that it will cause grave distress.*" (Emphasis supplied.) To the extent that our earlier formulation differed, it no longer applies.

[2] In *Palmer,* we construed ORS 656.156(2), which provides that, if a worker is injured because of "the deliberate intention of the employer of the worker to produce such injury," the worker may bring an action "for damages over the amount payable under [the workers' compensation] statutes." The concept of specific intent to cause emotional distress is consistent with the concept of specific intent to injure under ORS 656.156(2). *Compare Sheets v. Knight, supra* n 1, 308 Or at 236, *with Lusk v. Monaco Motor Homes, Inc.,* 97 Or App 182, 188, 775 P2d 891 (1989).

Defendants also argue that Hankins' conduct involved nothing more than "excessive supervision and unjustified reprimands[,]" along with the use of a racial epithet, which do not amount to an "extraordinary transgression of the bounds of socially tolerable conduct." *See Patton v. J. C. Penney Co., supra,* 301 Or at 122. In *Snyder v. Sunshine Dairy,* 87 Or App 215, 218, 742 P2d 57 (1987), we held that "excessive supervision and unjustified reprimands, even if proved, cannot amount" to the "extraordinary transgression" required to meet this element of the tort. Plaintiff's allegations that Hankins issued false reprimands, improperly denied training, and recommended to plaintiff that he leave his employment at PCC are not sufficient, without more, to meet this element. *See also Hall v. The May Dept. Stores, supra,* 292 Or at 139.[3] However, plaintiff did plead more; he alleged racially motivated verbal and physical abuse and alleged that all of Hankins' acts were part of a "continuing pattern of discrimination and retaliation."

The Supreme Court has analyzed the conduct element of the tort on a case-by-case basis, focusing on the means used to inflict the emotional distress. *See, e.g., Patton v. J. C. Penney Co., supra,* 301 Or at 123-24. Although we have found no Oregon authority on the use of a racial epithet in this context, several courts in other jurisdictions have suggested that the use of a racial epithet may constitute more than merely insulting language, *see Hall v. The May Dept. Stores, supra,* 292 Or at 135, and have held that it is a factor in establishing that a defendant's conduct was extreme and outrageous. *See Agarwal v. Johnson,* 25 Cal 3d 932, 947, 160 Cal Rptr 141, 603 P2d 58 (1979); *Alcorn v. Anbro Engineering, Inc.,* 2 Cal 3d 493, 498-99, 86 Cal Rptr 88, 468 P2d 216 (1970); *Contreras v. Crown Zellerbach,* 88 Wash 2d 735, 741-42, 565 P2d 1173 (1977). Moreover, plaintiff pleaded why the racial

---

[3] In *Hall,* the Supreme Court suggested that a plaintiff's status as an employee may provide a greater degree of protection when the court is determining whether the employer's conduct is "outrageous." 292 Or at 142. However, the court has also stated several times in the same context that in many respects "employment remains an arms [*sic*] length * * * relationship." *Patton v. J. C. Penney Co., supra,* 301 Or at 123; *Hall v. The May Dept. Stores, supra,* 292 Or at 141. Even in the employment context, a plaintiff must allege extreme conduct to state a claim for intentional infliction of severe emotional distress. *See Patton v. J. C. Penney Co., supra,* 301 Or at 123-24; *Trout v. Umatilla Co. School Dist.,* 77 Or App 95, 102-03, 712 P2d 814 (1985), *rev den* 300 Or 704 (1986).

epithet "boy" is especially offensive to a black man and pleaded that Hankins intended to "severely demean and insult" him by using it. *See Pakos v. Clark,* 253 Or 113, 126-28, 453 P2d 682 (1969); *Fitzpatrick v. Robbins,* 51 Or App 597, 602, 626 P2d 910, *rev den* 291 Or 151 (1981). He also alleged that Hankins shoved him and attempted to lock him in a room. Physical acts such as those are factors in establishing the conduct element of the tort. *See Brewer v. Erwin,* 287 Or 435, 458-59, 600 P2d 398 (1979). The pleaded facts, when considered as a whole, describe an "extraordinary transgression of the bounds of socially tolerable conduct." *See Patton v. J. C. Penney Co., supra,* 301 Or at 122.[4]

Reversed and remanded on the claim for intentional infliction of emotional distress; otherwise affirmed.

**RIGGS, J.,** concurring in part; dissenting in part.

I agree with the majority that plaintiff has stated a claim for intentional infliction of emotional distress, but I disagree with its failure to recognize that there is a special relationship between employer and employee that affects the intent element of that tort. Unlike the majority, I would hold that plaintiff has also stated a claim for intentional interference with an economic relationship. I therefore concur on the emotional distress claim, but I would reverse on the interference with an economic relationship claim. As does the majority, I will first discuss the claim for intentional interference with an economic relationship.

The majority holds that plaintiff did not allege an injury to his employment contract, because he did not allege that Hankins' conduct prevented him from receiving any benefit of that contract. 100 Or App at 468. However, plaintiff did allege that Hankins' actions caused him stress, as a result of which he took 280.5 hours of sick leave. If plaintiff had not had that sick leave accrued, he would have lost wages. The sick leave was part of his contractual compensation for his services, *Harryman v. Roseburg Fire Dist.,* 244 Or 631, 420 P2d 51

---

[4] Plaintiff sufficiently pleaded the remaining element of severe emotional distress. He alleged that Hankins' conduct resulted in stress that lasted for over two years and that the stress was so severe that it caused him to take substantial time off from work. *See Bodewig v. K-Mart, Inc.,* 54 Or App 480, 488, 635 P2d 657 (1981), *rev den* 292 Or 450 (1982).

(1966), and it will not be available again if plaintiff needs it. Performance of his employment contract, therefore, will not only be more difficult as a direct result of Hankins' intentional interference with it; it will also be less valuable. *See American Sanitary Service v. Walker,* 276 Or 389, 394, 554 P2d 1010 (1976). That is sufficient, under the majority's reasoning and the cases that it cites, to state a claim for intentional interference with plaintiff's contractual relationship with PCC.

I turn to plaintiff's claim for intentional infliction of mental distress. The Supreme Court has described the elements of that tort, in language that the majority quotes:

"First, *ordinarily* a plaintiff must allege that a defendant intended to inflict severe mental or emotional distress. It is not enough that [the defendant] intentionally acted in a way that causes such distress. Second, a defendant's act must in fact cause a plaintiff severe mental or emotional distress. Third, a defendant's actions must consist of 'some extraordinary transgression of the bounds of socially tolerable conduct' or the actions must exceed 'any reasonable limit of social toleration.' *Hall v. The May Dept. Stores,* 292 Or 131, 135, 137, 637 P2d 126 (1981)." *Patton v. J. C. Penney Co.,* 301 Or 117, 122, 719 P2d 854 (1986). (Emphasis supplied.)

I agree with the majority that plaintiff has alleged the second and third elements of the tort. In addition, I agree that it is possible to read his complaint as also alleging that Hankins specifically intended to inflict severe mental or emotional distress. I disagree, however, with the majority's refusal to consider plaintiff's assertion that "employment creates a special relationship that lowers the requisite level of intent." 100 Or App at 469. If plaintiff is correct, as I believe that he is, he should not have to prove at trial the level of intent that the majority requires.

In *Patton v. J. C. Penney Co., supra,* the Supreme Court said that *ordinarily* the plaintiff must allege that the defendant intended to inflict distress. It did not discuss the issue any further, because it held that the defendant's alleged conduct was not so extraordinary as to subject it to liability. Therefore, it did not have to consider what mental state was necessary to prove the tort. However, both we and the Supreme Court had previously done so.

In *Bodewig v. K-Mart, Inc.,* 54 Or App 480, 635 P2d

657 (1981), *rev den* 292 Or 450 (1982), we held that an employer and employee are in a special relationship

> "based on which liability may be imposed if [the employer's] conduct, though not deliberately aimed at causing emotional distress, was such that a jury might find it to be beyond the limits of social toleration and reckless of the predictable effects on [the] plaintiff." 54 Or App at 486.

A month after that decision, the Supreme Court considered the issue at greater length in *Hall v. The May Dept. Stores, supra.* After discussing previous cases, it stated that the relationship between the plaintiff and the defendant in an intentional infliction of emotional distress case may be one that "imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers." Such a relationship may affect both the mental element necessary to impose liability and the determination of whether the defendant's conduct is so offensive as to cross the threshold of potential liability. 292 Or at 137. After discussing earlier decisions, the court concluded that "the duty to refrain from abusive behavior in the employment relationship comes closer to that of the physician toward a patient * * * than to that of * * * police officers toward a citizen not in custody and free to terminate the encounter[.]" 292 Or at 138. It then evaluated the evidence in the case before it on the assumption that the plaintiff could prove her case by showing that the employer acted in reckless disregard of the distress inflicted.[1]

Although the majority relies on the same portion of the Supreme Court's opinion in *Patton v. J. C. Penney Co., supra,* as I do, it does not give sufficient weight to the court's use of "ordinarily" in describing what a plaintiff must allege or to its reliance on *Hall v. The May Dept. Stores, supra,* for the elements of the tort. Those factors convince me that the court did not intend to modify *Hall* and that, under *Hall,* plaintiff may prove the intent element of his claim for intentional

---

[1] In *Hall,* the evidence supported a finding that the defendant had intentionally subjected the plaintiff to severe mental and emotional distress as a cold-blooded tactic of interrogation. Because the Supreme Court did not hold that the evidence supported a finding that the defendant did so with the intent of causing that distress, but did hold that the evidence was sufficient to support the plaintiff's claim, it necessarily accepted the plaintiff's position that the defendant's recklessness as to the effects of its actions was sufficient. 292 Or at 139-142.

infliction of emotional distress by showing that Hankins intentionally engaged in conduct with reckless disregard for the consequences of his conduct on plaintiff.[2] That is what plaintiff has pled.

I concur in the reversal of the intentional infliction of emotional distress claim and dissent from the affirmance of the intentional interference with an economic relationship claim.

---

[2] In *Sheets v. Knight,* 308 Or 220, 236, 779 P2d 1000 (1989), the Supreme Court held that an employee had failed to state a claim for intentional infliction of emotional distress, because he did not allege that the defendants intended to cause severe emotional distress and "[i]t is insufficient merely to allege that the defendant acted in a way that caused severe emotional distress." The court did not discuss its holding in *Hall v. The May Dept. Stores, supra,* let alone expressly overrule it. The plaintiff in *Sheets* did not allege that the defendants acted with reckless disregard of the effect of their actions on him, and that failure in itself made the pleading defective under the *Hall* standard. I would not hold that the court intended, by *dictum* in *Sheets,* to withdraw from the position that it took in *Hall* after full consideration.