Argued and submitted October 26, 1984, reversed December 26, 1985, reconsideration denied February 14, petition for review denied March 25, 1986 (300 Or 704)

TROUT,
*Respondent,*

*v.*

## UMATILLA COUNTY SCHOOL DISTRICT UH3-MILTON-FREEWATER (McLOUGHLIN UNION HIGH SCHOOL),
*Appellant.*

(82-6-607; CA A28200 (Control)

VANN,
*Respondent,*

*v.*

## UMATILLA COUNTY SCHOOL DISTRICT UH3-MILTON-FREEWATER (McLOUGHLIN UNION HIGH SCHOOL),
*Appellant.*

(82-6-608; CA A28201)

EDWARDS,
*Respondent,*

*v.*

## UMATILLA COUNTY SCHOOL DISTRICT UH3-MILTON-FREEWATER (McLOUGHLIN UNION HIGH SCHOOL),
*Appellant.*

(82-6-609; CA A28202)
(Cases Consolidated)

712 P2d 814

William L. Hallmark, Portland, argued the cause for appellant. With him on the brief was Hallmark, Griffith & Keating, P.C., Portland. On the reply brief were William G. Earle, and Hallmark, Griffith & Keating, P.C., Portland.

Eugene Hallman, Pendleton, argued the cause for respondents. With him on the briefs were Stuart I. Teicher, and Mautz, Hallman & Teicher, Pendleton.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

WARREN, J.

## WARREN, J.

In these three consolidated cases, Umatilla County School District UH3-Milton-Freewater (District) appeals from judgments entered on jury verdicts in the amount of $75,000 in favor of each of the three plaintiffs. We reverse.

In 1981, each plaintiff was employed as a teacher at McLoughlin-Union High School in Milton-Freewater. In addition to teaching responsibilities, plaintiffs Vann and Edwards were coaches at the school, and Trout had been a coach at the school for eight years until 1980. On June 4, 1981, an end-of-the-year teachers' retirement party was held at the Milton-Freewater Elks Club and plaintiffs, along with others at the party, were drinking. Plaintiffs left the party together in Edwards' car and later crashed into a cement abutment in downtown Milton-Freewater. Among the crowd that gathered were students from the high school. Edwards was cited for driving while under the influence but was acquitted by a jury in November, 1981.

Following the incident, the school board voted disciplinary action against plaintiffs on June 9 and then rescinded the action on the advice of counsel at a meeting on June 29. On July 14, the board held a special meeting and reinstated the disciplinary action.[1] Reports of these events were published by various media, including the Walla Walla *Union Bulletin,* the Milton-Freewater *Valley Herald* and the *Pendleton East Oregonian.* Some of the accounts included interviews with the school board chairman and school officials.

We first address the issue whether plaintiffs have alleged three separate claims for relief. ORCP 18. Plaintiffs argue that they have only one claim for relief consisting of three separate "counts": (1) invasion of privacy, (2) outrageous conduct, and (3) breach of contract. These "counts" all seek individual damages only for emotional distress. After trial the jury returned general verdicts finding that plaintiffs had prevailed on all claims but assessing one amount for damages. Plaintiffs argue that, if any one of the "counts"

---

[1] Vann was put on probation in his positions as freshman basketball coach and assistant track coach. Edwards was removed as head basketball coach and put on probation in his position as assistant football coach. Trout was to be sent a letter of reprimand.

supports the verdict, the judgment must be affirmed, notwithstanding the fact that the verdicts do not show whether different damages have been allotted to different counts.

■        As District states:

> "The issue for determination * * * is whether the three fact patterns [alleged by plaintiffs] each set[s] forth some legal duty to plaintiffs the breach of which necessarily resulted in the same injuries to plaintiff."

The duties allegedly breached arise from separate, although related, facts and result in damages to different interests. The facts which would establish a breach of contract claim are not those for an invasion of privacy by publication of personal facts. Proof of a breach of contract will not support a finding of outrageous conduct. We know of no authority to support an award of damages for emotional distress on a breach of contract claim. There are therefore three separate claims. The verdict here does not show how the jury apportioned damages to each claim, and so, if any claim was improperly submitted, we must remand. *See Pavlick v. Albertson's, Inc.,* 253 Or 370, 454 P2d 852 (1969). If all the claims were improperly submitted, we must reverse.

■■        We turn first to plaintiffs' claim for breach of the collective bargaining agreement between District and plaintiffs' union.[2] District argues that the Employment Relations Board has exclusive jurisdiction over any breach of the agreement and that plaintiffs cannot sue District for breach of that contract in circuit court.[3] District is correct.

ERB has the duty of "hearing and deciding all unfair labor practice complaints concerning public employers." ORS 243.676. Contract and arbitration disputes are unfair labor practices. ORS 243.672(1)(g). We have held that ERB has exclusive jurisdiction over unfair labor practice complaints. *School District 115 v. OSEA,* 64 Or App 685, 669 P2d 821, *rev den* 296 Or 253 (1983); *AFCME v. Executive Dept.,* 52 Or App

---

[2] Plaintiffs argue that District did not raise the jurisdictional argument below and cannot do so now. Jurisdiction can be raised at any time. ORCP 21G(4); *Hughes v. Casualty Co.,* 234 Or 426, 383 P2d 55 (1963). Furthermore, we must always consider whether we have jurisdiction.

[3] Because ERB has exclusive jurisdiction over the breach of contract claim, we address assignments of error one to six only insofar as they are related to defendant's other claimed errors.

457, 628 P2d 1228, *rev den* 291 Or 771 (1981); *see also East Co. Bargaining Council v. Centennial Sch. Dist.*, 298 Or 146, 689 P2d 958 (1984); *Smith v. State of Oregon*, 31 Or App 15, 569 P2d 677 (1977), *rev den* 281 Or 99 (1978). The claim should not have been submitted to the jury.

■■ District's second claim is that the trial court erred in denying its motion to remove[4] the claim for invasion of privacy from the jury.[5] This tort was discussed in *Humphers v. First Interstate Bank of Oregon*, 298 Or 706, 714, 696 P2d 527 (1985):

> "Prosser and Keeton, Torts [851-66] (5th Ed 1984) identified the four kinds of claims grouped under the 'privacy' tort as, first, appropriation of the plaintiff's name or likeness; second, unreasonable and offensive intrusion upon the seclusion of another; third, public disclosure of private facts; and fourth, publicity which places the plaintiff in a false light in the public eye."

Plaintiffs argue

> "[t]hat the defendant breached their right of privacy in two distinct respects. First, the defendant took disciplinary action against the plaintiffs as a result of conduct which was totally beyond the scope of plaintiffs' employment and which occurred while plaintiffs were acting solely in their capacity as private citizens. Second, the defendant publicized numerous items concerning the plaintiffs, the accident in question, the disciplinary proceedings and supposed 'evidence.'"

■■ Plaintiffs' first position seeks to state a claim for invasion of privacy by offensive intrusion upon the seclusion of others. Plaintiffs failed to prove any facts which would form the basis for this claim. As stated in *Restatement (Second) Torts*, § 652B, *comment c*, a defendant is liable for intruding upon the seclusion of another "only when he has intruded into

---

[4] At the close of plaintiffs' case in chief, defendant moved for a "directed verdict" on all three claims. The motion was denied. At the conclusion of rebuttal, defendant renewed the motion, which plaintiffs now claim was inadequate to preserve the objection. We disagree. The motion was sufficiently clear to apprise the court and counsel of defendant's objection to all three claims and the basis for these objections. Even if it was not, District did not waive its objection by putting on evidence. *See* ORCP 60.

[5] District concedes that plaintiffs' claim for invasion of privacy is not barred by the existence of exclusive jurisdiction in ERB over the contract. ERB cannot provide a tort remedy for alleged tortious conduct. *See* ORS 243.676.

a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Even District disciplined plaintiffs for conduct outside their employment, that conduct was neither private nor secluded. The party and the accident were both public events, not private affairs into which District pried. *See* Prosser and Keeton, *Torts, supra,* at 854-56; *see also Humphers v. First Interstate Bank, supra,* 298 Or at 711-717.

■■ Plaintiffs also failed to prove any actionable publicity by District. In a claim for invasion of privacy by publication of facts, the facts disclosed must be private, not public. *Tollefson v. Price,* 247 Or 398, 401, 430 P2d 990 (1967). Many of plaintiffs' complaints—for example, that District published the fact that plaintiffs had consumed alcohol before the accident or that District had been making an effort to discourage drinking and drug abuse—were public knowledge and cannot support a claim for invasion of privacy. That plaintiffs were disciplined and the nature of that discipline was public information. ORS 192.660(4). Comments made by the superintendent to the effect that plaintiffs were disciplined under their coaching contracts because Oregon's Fair Dismissal Law makes it difficult to fire teachers is a comment on why the discipline was chosen, not a statement about plaintiffs' personal lives.

As the Supreme Court stated in *Humphers v. First Interstate Bank, supra,* 298 Or at 713:

"[R]ecognition of an interest or value deserving protection states only half a case. Tort liability depends on the defendant's wrong as well as the plaintiff's interest, or 'right' unless some rule imposes strict liability. One's preferred seclusion or anonymity may be lost in many ways; the question remains who is legally bound to protect those interests at the risk of liability."

Although plaintiffs might well have wished to remain away from the public eye, their anonymity was lost when they were involved in a public incident the consequence of which was disciplinary action by a public body. District's comments on those consequences are not actionable. As explained in *Restatement (Second) Torts,* § 652D:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for

invasion of his privacy, if the matter publicized is of a kind that

"* * * * *

"(b)   is not of legitimate concern to the public."

*Comment b* explains the reach of the publicity:

"The rule stated in this Section applies only to publicity given to matters concerning the private, as distinguished from the public, life of the individual."

Plaintiffs claimed that District had invaded their privacy by publishing *District's* actions in connection with plaintiffs. District's actions do not pertain to the private lives of plaintiffs. The publicity by District was related to plaintiffs' conduct that resulted in the disciplinary proceedings. District's motion to withdraw the claim for invasion of privacy should have been granted.

As a final claim, plaintiffs allege that the actions of District constituted outrageous conduct. District moved for a directed verdict on this claim. The motion should have been granted.

### The Oregon Supreme Court

"[h]as attempted * * * to discourage the idea that there is a general tort of 'outrageous conduct,' partly because the phrase misleadingly suggests potential recovery of damages whenever someone's conduct could be said to deserve the epithet." *Humphers v. First Interstate Bank, supra,* 298 Or at 709 n 1.

In this court's consideration of *Humphers,* we summarized outrageous conduct as follows:

"Outrageous conduct * * * requires inflicting actual mental suffering on the plaintiff to be the deliberate purpose of the defendant's conduct. However, the tortious purpose can be found in the breach of some obligation that attaches to a defendant's responsibility toward the plaintiff. * * * [A] relationship is sufficient to create the duty; and defendant may therefore be liable, even if [he] did not have as his deliberate purpose inflicting actual mental suffering on plaintiff.

"However, plaintiff must still allege and prove * * * that the means of inflicting the injury were 'extraordinary.' 'Lack of foresight, indifference to possible distress, even gross negligence, is not enough to support this theory of recovery.' In order for plaintiff to recover, she must allege and prove that

the offensiveness of [the] conduct 'exceeds any reasonable limit of social toleration.'" *Humphers v. First Interstate Bank,* 68 Or App 573, 576, 684 P2d 581 (1984).

The parties agree that an employer-employe relationship, such as existed here, imposes a greater obligation to refrain from inflicting mental distress than the obligation which exists between strangers. *See Hall v. The May Dept. Stores,* 292 Or 131, 138, 637 P2d 126 (1981). Plaintiffs have alleged that District breached that obligation by engaging in the conduct which gave rise to the breach of contract claim and in breaching an alleged settlement agreement by keeping a disciplinary file on plaintiffs, putting plaintiffs' names first on a list for reduction of force of teaching staff and putting the teachers on unofficial probation.

In *Hall v. The May Dept. Stores, supra,* the plaintiff, an employe, was questioned regarding shortages in the cash register at her work station. She was not accused or questioned further about the shortages, but other saleswomen were assigned to lines of merchandise that she had previously handled, and she eventually gave up her employment. The Supreme Court found that the decisions concerning the plaintiff's work assignments might give rise to a remedy under an employment contract but were not decisions which qualified as intentional infliction of severe mental distress by aggravated acts of persecution. 292 Or at 139.

Giving plaintiffs here the benefit of all favorable evidence, as well as all favorable inferences which may reasonably be drawn therefrom, *see Krause v. Eugene Dodge, Inc.,* 265 Or 486, 509 P2d 1199 (1973), District's actions in allegedly breaching the contract still do not support a claim for outrageous conduct on the facts presented at trial. Those acts in the employment situation do not qualify as aggravated acts of persecution although they might, in fact, be a basis to support the alleged breach of contract.

Neither do we find outrageous conduct in the actions which gave rise to the invasion of privacy claim. The kinds of actions within the employer-employe relationship which may give rise to a legal claim for outrageous conduct have been described in recent cases. In *Hall v. The May Dept. Stores, supra,* 292 Or at 141, the Supreme Court said:

"[T]he jury could find that Rummell [the defendant's

agent] knew that he did not have 'proof' of plaintiff's guilt, that he knew he did not have evidence sufficient to have her arrested, that he nevertheless told her that he had sufficient proof to have her arrested and charged with embezzlement, and that he shouted at plaintiff and pounded the desk, referring to sheets of paper which he did not explain to her. Moreover, the jury could infer that although Rummell knew that the charts at most were evidence of one of several hypotheses, his insistence that he had 'proof,' coupled with offering the employee a choice between accepting his 'help' and a threat of arrest and prosecution, were a deliberate and systematic tactic to threaten and frighten the employee into a confession."

This court, in *Bodewig v. K-Mart, Inc.,* 54 Or App 480, 486, 635 P2d 657 (1981), *rev den* 292 Or 450 (1982), stated:

"[A] jury could find that the K-Mart manager, a 32-year-old male in charge of the entire store, after concluding that the plaintiff did not take the customer's money, put her through the degrading and humiliating experience of submitting to a strip search in order to satisfy the customer, who was not only acting unreasonably, but was creating a commotion in the store[,] * * * was conducting himself outrageously."

Under those cases, plaintiffs' evidence of District's actions arising from the disciplinary proceedings does not suffice to sustain a conclusion that those actions fall beyond the outer bounds of socially tolerable employer practices. *See Hall v. The May Dept. Stores, supra,* 292 Or at 139. The comments made by District personnel and board members did not reach that extreme level. The suggestions by the school board chairman that the discipline was linked to a drug and alcohol program among students at the high school and that technical laws made it difficult to fire teachers may show a lack of foresight or sensitivity, but they are not aggravated acts of persecution that qualify as intentional infliction of emotional distress. On the evidence the jury should not have been permitted to find that the conduct was outrageous. It was therefore error for the trial judge to deny District's motion for a directed verdict.[6]

Reversed.

---

[6] Because we hold that District's motions to withdraw plaintiffs' claims should have been granted, we do not address the remaining assignments of error.