Henry M. BOURGO, Plaintiff,

v.

CANBY SCHOOL DISTRICT, a public body corporate and political subdivision of the State of Oregon, Defendant.

No. CR 99–1402–BR.

United States District Court, D. Oregon.

March 21, 2001.

James M. Brown, Loren W. Collins, Enfield Brown Collins Knivila & Cook, Salem, OR, for Plaintiff.

Karen M. Vickers, David A. Ernst, Bullivant Houser Bailey, Portland, OR, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

This employment discrimination case comes before the Court on Defendant's Motion for Summary Judgment (# 23). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### *THE FIRST AMENDED COMPLAINT*

Plaintiff is a licensed public school administrator who worked for Defendant from 1990 through June 1999. In 1998, Defendant reassigned Plaintiff from his job as a principal to a newly created position that combined administrative and counseling duties. In early 1999, Plaintiff allegedly was diagnosed as suffering from disabling anxiety and, thereafter, Major Depressive Disorder. Plaintiff took an extended medical leave beginning February 1, 1999. On June 7, 1999, Defendant's superintendent advised Plaintiff he intended to recommend to Defendant's Board of Directors that Plaintiff be dismissed. The Board voted to dismiss Plaintiff on June 28, 1999.

Plaintiff appealed Defendant's termination decision to the Oregon Fair Dismissal Appeals Board (FDAB). After a hearing, the FDAB voted to uphold Plaintiff's termination. Plaintiff did not seek direct judicial review of the FDAB's decision. Instead, Plaintiff filed his First Amended Complaint in this action shortly after the FDAB decision issued.

In his First Amended Complaint, Plaintiff first alleges Defendant dismissed him

"to avoid plaintiff's rights under the [Family Medical Leave Act (FMLA)] to utilize accrued sick leave and, when medically appropriate, to return to his employment." In his Second Claim for Relief, Plaintiff alleges Defendant violated the Americans with Disabilities Act (ADA) by terminating Plaintiff because of his disability even though Plaintiff's "physical and mental impairments, with reasonable accommodation, would not have prevented plaintiff from performing the essential functions of his position with defendant." Plaintiff brings a similar Third Claim for Relief pursuant to Oregon state disability law.

In his Fourth Claim for Relief, Plaintiff alleges Defendant committed the tort of intentional infliction of emotional distress (IIED) when it withheld a portion of Plaintiff's salary upon reassigning his job duties in 1998, threatened him with withholding of salary if he declined to apply for worker's compensation benefits, and brought dismissal proceedings against him for declining to apply for worker's compensation benefits. In addition, Plaintiff alleges Defendant intentionally inflicted emotional distress on him when it published the news of his dismissal. Defendant denies it discriminated against Plaintiff or intentionally inflicted emotional distress on him.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment against all of Plaintiff's claims. Defendant's contends primarily that "[t]he FDAB decision provides a preclusive finding that Plaintiff was terminated for a legitimate, non-discriminatory reason." By implication, Defendant argues the FDAB decision precludes this Court from determining that Defendant terminated Plaintiff's employment to avoid its FMLA obligations to Plaintiff or to retaliate against Plaintiff for having exercised his FMLA rights. Alternatively, Defendant argues the undisputed material facts show it terminated Plaintiff's employment for a legitimate, nondiscriminatory reason.

Defendant also argues the FDAB decision precludes Plaintiff from pursuing an ADA claim in this action. Defendant further contends the undisputed facts establish Plaintiff was not a "qualified individual with a disability" protected by the ADA. Defendant makes similar arguments with regard to Plaintiff's state-law disability claim.

Finally, Defendant contends it is entitled to summary judgment on Plaintiff's IIED claim because the acts alleged "do not constitute a transgression beyond the bounds of socially tolerable conduct."

### ANALYSIS

**I. Summary Judgment Standard**

Under Fed.R.Civ.P. 56:

Summary judgment should be granted if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact. The underlying substantive law governing the claims determines whether or not it is material. Reasonable doubts as to the existence of material factual issue[s] are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party. There must be enough doubt for a "reasonable trier of fact" to find for plaintiffs in order to defeat the summary judgment motion.

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000) (citations omitted).

## II. Defendant Is Not Entitled to Summary Judgment on Plaintiff's FMLA Claim

### A. *The FDAB Process*

Defendant contends Plaintiffs' FMLA and ADA claims are precluded by the findings of the FDAB. An examination of the FDAB's role is necessary to an understanding of the extent to which its decision may have preclusive effect in this action.

When an Oregon school district dismisses a teacher or administrator, the dismissed person may appeal that decision to the FDAB. Or.Rev.Stat. § 342.905(1). A hearings officer conducts a contested case hearing and files proposed findings of fact. *Id.* § 342.905(5). The FDAB then provides the parties with a reasonable opportunity for oral and written argument and issues a written decision within 140 days. *Id.* § 342.905(7).

> The Fair Dismissal Appeals Board panel shall determine whether the facts relied upon to support the statutory grounds cited for dismissal or non-extension and included in the hearings officer's findings of fact are true and substantiated. The panel's review of the evidence shall be de novo. If the panel finds these facts true and substantiated, it shall then consider whether such facts, in light of all the circumstances and additional facts found by the hearings officer that are relevant to the statutory standards in ORS 342.865(1), are adequate to justify the statutory grounds cited. In making such determination, the panel shall consider all reasonable written rules, policies and standards of performance adopted by the school district board unless it finds that such rules, policies and standards have been so inconsistently applied as to amount to ar-

bitrariness. The panel shall not reverse the dismissal or non-extension if it finds the facts relied upon are true and substantiated unless it determines, in light of all the evidence and for reasons stated with specificity in its findings and order, that the dismissal or non-extension was unreasonable, arbitrary or clearly an excessive remedy.

*Id.* § 342.905(8). FDAB decisions are subject to judicial review under the Oregon Administrative Procedures Act. *See id.* § 342.905(11).

### B. *Issues Decided in Other Proceedings May Have Preclusive Effect in FMLA Litigation*

■ Defendant contends the FDAB decision establishes conclusively that Defendant terminated Plaintiff's employment because of Plaintiff's poor job performance rather than for some other reason. Plaintiff first responds that state administrative decisions never have preclusive effect in FMLA litigation. Defendant disagrees. The parties have not identified, and the Court has not found, any published federal opinion that addresses this issue directly.[1]

Federal courts have addressed generally the circumstances under which state administrative decisions may have preclusive effect in subsequent federal litigation. The Full Faith and Credit Clause and 28 U.S.C. § 1738 govern the preclusive effect federal courts must give to the judgments of state courts. *University of Tennessee v. Elliott,* 478 U.S. 788, 794, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Those provisions do not apply to state administrative agency decisions that have not been judicially reviewed. *Id.* As a matter of common law, however, the unreviewed final decision of a

---

1. In *Kosakow v. New Rochelle Radiology Assocs.,* 88 F.Supp.2d 199 (S.D.N.Y.2000), the court gave preclusive effect to a state administrative decision in later FMLA litigation.

There is no indication in *Kosakow,* however, that the plaintiff argued, as Plaintiff does here, that state agency findings have no preclusive effect in a subsequent FMLA action.

state administrative agency still may have preclusive effect in federal litigation. *See Astoria Federal Savings & Loan Assoc. v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Indeed, there is a presumption that preclusion applies except when Congress expressly or impliedly has demonstrated a contrary intent. *Id.* at 110, 111 S.Ct. 2166. The Supreme Court has found such Congressional intent with regard to Title VII because that statute requires the EEOC to give substantial weight to the findings of state and local authorities in proceedings brought under state or local discrimination law, which implies those findings are not conclusive:

> In *Elliott,* which ... dealt with Title VII, the test for the presumption's application was thus framed as the question "whether a common-law rule of preclusion would be consistent with Congress' intent in enacting [the statute]." In contrast to 42 U.S.C. § 1983, in which the Court discerned " '[n]othing ... remotely express[ing] any congressional intent to contravene the common-law rules of preclusion,' " Title VII was found by implication to comprehend just such a purpose in its direction that the EEOC accord " 'substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law.' " What does not preclude a federal agency cannot preclude a federal court; we accordingly held that in the district courts the "substantial weight" standard allowed clearly for something less than preclusion.

*Id.* (citations omitted).

In *Solimino,* the Supreme Court held Congress also intended to abrogate common-law preclusion rules when it enacted the Age Discrimination in Employment Act (ADEA).

We reach the same result here, for the Age Act, too, carries an implication that the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims. While the statute contains no express delimitation of the respect owed to state agency findings, its filing requirements make clear that collateral estoppel is not to apply. Section 14(b) requires that where a State has its own age discrimination law, a federal Age Act complainant must first pursue his claim with the responsible state authorities before filing in federal court. It further provides that "no suit may be brought under [the Age Act] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated." The deadline for filing with the EEOC likewise refers to the termination of prior state administrative action, § 7(d)(2) providing that where § 14(b) applies "[s]uch a charge shall be filed ... within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." Both provisions plainly assume the possibility of federal consideration after state agencies have finished theirs.

And yet such federal proceedings would be strictly *pro forma* if state administrative findings were given preclusive effect.

\* \* \* \* \* \*

Thus § 14(b) suffices to outweigh the lenient presumption in favor of administrative estoppel, a holding that also comports with the broader scheme of the Age Act and the provisions for its enforcement.

*Id.* at 110–12, 111 S.Ct. 2166 (citations omitted).

Under *Solimino* and *Elliott,* therefore, the presumption that unreviewed state agency determinations have preclusive effect in later federal litigation is overcome only if the statute pursuant to which the federal action is brought demonstrates that Congress intended to abrogate the usual principles of preclusion. When a statute, like 42 U.S.C. § 1983, shows no such intent, the presumption of preclusion remains. *See Solimino,* 501 U.S. at 110, 111 S.Ct. 2166 (citing earlier cases).

The FMLA does not contain indicia of Congressional intent to abrogate preclusion principles similar to those found in Title VII and the ADEA. As Plaintiff himself points out, the FMLA, unlike Title VII, does not require a plaintiff to first file an EEOC claim before filing a civil claim for relief. Nor does the FMLA include any language that requires the EEOC to give only "substantial weight" to the findings of state agencies. Moreover, the FMLA does not include language analogous to the ADEA's requirement that plaintiffs pursue state remedies for age discrimination before filing a federal action. In short, there is no FMLA provision that suggests a state proceeding cannot have preclusive effect in a subsequent FMLA action; therefore, the presumption in favor of preclusion applies.

C. *The FDAB Decision Does Not Preclude Plaintiff from Arguing Defendant Dismissed Him Because of His Use of Medical Leave*

■ Although this Court has concluded that administrative decisions generally may have preclusive effect in FMLA litigation, it still must address whether the

FDAB decision has preclusive effect in this particular action. The FDAB decision may preclude Plaintiff's FMLA claim only if two requirements are met. First, the decision must satisfy the fairness requirements outlined in *United States v. Utah Const. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). *See Elliott,* 478 U.S. at 797–98, 106 S.Ct. 3220. *See also Miller v. County of Santa Cruz,* 39 F.3d 1030, 1032–33 (9th Cir.1994), *cert. denied,* 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995).[2] Plaintiff does not contend the FDAB review did not meet the *Utah Construction* fairness requirements in this case.

To satisfy the second requirement, the state administrative decision must be one to which the courts of the same state would give preclusive effect. *See Wehrli v. County of Orange,* 175 F.3d 692, 695 (9th Cir.), *cert. denied,* 528 U.S. 1004, 120 S.Ct. 498, 145 L.Ed.2d 384 (1999). Under Oregon law, an agency's determination of fact will be given preclusive effect in a later proceeding if five requirements are met:

1. The issue in the two proceedings is identical.

2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

5. The prior proceeding was the type of proceeding to which [the Oregon

---

**2.** "The fairness requirements of *Utah Construction* are: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." *Miller,* 39 F.3d at 1033.

Supreme Court] will give preclusive effect.

*Nelson v. Emerald People's Util. Dist.,* 318 Or. 99, 862 P.2d 1293 (1993), *quoted in Dodd v. Hood River County,* 136 F.3d 1219, 1225 (9th Cir.), *cert. denied,* 525 U.S. 923, 119 S.Ct. 278, 142 L.Ed.2d 229 (1998).

The Court first must address whether the issue determined by the FDAB is identical to an issue in this case. Plaintiff must prove each of three elements to prevail on his FMLA retaliation claim in this Court:

(1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the two actions. Once a prima facie case of discrimination is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's termination. If the defendant can express a legitimate nondiscriminatory reason for the termination, the burden then shifts back to the plaintiff to produce evidence that the reason articulated by the employer is a pretext for the retaliatory reason.

*Washington v. Fort James Operating Co.,* 110 F.Supp.2d 1325, 1330 (D.Or.2000) (citations omitted). It is undisputed that Plaintiff availed himself of FMLA by taking medical leave and was adversely affected by Defendant's decision to terminate his employment in June 1999. The only issue is whether a causal connection exists between Plaintiff's use of his medical leave and his termination.

The FDAB did not consider or determine whether Plaintiff's June 1999 termination occurred because he took medical leave or otherwise asserted his rights under the FMLA. Instead, the FDAB considered only Defendant's allegation that Plaintiff had significant performance problems and whether that allegation was "adequate to justify the statutory grounds the district relied upon in taking the action" of dismissal. The FDAB found Plaintiff "conducted himself in a manner that amounted to inefficiency and established that he neglected his duties. The conduct also constituted inadequate performance." The FDAB concluded the district's dismissal of Plaintiff "was not unreasonable, arbitrary or clearly excessive."

Although the FDAB investigated whether Plaintiff's performance was deficient, it did not evaluate whether another reason, such as Plaintiff's invocation of his FMLA rights, might have prompted Defendant to terminate Plaintiff's employment. The issue decided by the FDAB, therefore, is not identical to the issue in this litigation and the first *Nelson* requirement is not met.

For similar reasons, Defendant has not established the second prong of the *Nelson* test, which is satisfied only if "the issue actually was litigated and essential to a final decision on the merits in the prior proceeding." *Washington County Police Officers Ass'n v. Washington County,* 321 Or. 430, 436, 900 P.2d 483 (1995). The parties did not litigate before the FDAB the question whether Defendant dismissed Plaintiff in retaliation for Plaintiff's assertion of his FMLA rights. An analysis of that issue, therefore, was not essential to the FDAB's decision.

For these reasons, the Court concludes the FDAB decision does not preclude Plaintiff from arguing Defendant terminated Plaintiff's employment because he asserted his rights under the FMLA. Moreover, the FDAB decision does not establish conclusively that Plaintiff's job performance was sufficiently poor to justify his termination. The FDAB considered the quality of Plaintiff's job performance without the benefit of Plaintiff's evidence that Defendant was unhappy with the amount of medical leave Plaintiff had taken and

planned to take in the future. Thus, the FDAB had little reason to question the accuracy of Defendant's evidence regarding Plaintiff's alleged neglect of his duties, inefficiencies, and unsatisfactory performance. *Cf.* Defendant's Concise Statement of Material Facts, Exh. B at 31 (FDAB decision) ("the independent evidence of non-performance was too strong, *on this record,* to lead the panel to question whether there was an alternative motive for the district action") (emphasis added). In sum, the FDAB findings have no preclusive effect in this litigation.

D. *There Is Evidence in the Record from which a Factfinder Could Infer Defendant Terminated Plaintiff Because He Invoked His FMLA Rights*

■ Defendant argues it is entitled to summary judgment on the FMLA retaliation claim even if that claim is not precluded by the FDAB decision because the undisputed facts establish Defendant terminated Plaintiff's employment because of Plaintiff's "numerous performance problems." The Court disagrees. Although there is evidence in the record that Plaintiff performed poorly, there also is evidence from which a factfinder could determine Defendant actually fired Plaintiff because he took medical leave. Viewing the facts in the light most favorable to Plaintiff, a factfinder could infer an unlawful motive for the termination from the timing of the following events.

Plaintiff went on medical leave for anxiety starting on February 1, 1999. A week later, Defendant's superintendent informed Plaintiff he was "considering recommending the non-extension of [Plaintiff's] contract to the School Board ...." In March, Plaintiff was diagnosed with serious depression. In April, the superintendent informed the school board it could gain access to Plaintiff's medical records if a workers' compensation claim were filed on Plaintiff's behalf. The superintendent also informed the school board that Plaintiff had over 100 days of sick leave remaining. The superintendent admits he and the school district had not yet made any decision about dismissing Plaintiff at the time of the April school board meeting. Later in April, the school district attempted to file a workers' compensation claim on Plaintiff's behalf. A week later, Plaintiff informed the district's workers' compensation insurance carrier he did not intend to apply for those benefits. On May 6, 1999, the superintendent wrote Plaintiff a letter in which he asserted Defendant was confused regarding whether Plaintiff's disability was work-related. The superintendent stated "the District will insist that you pursue the exclusive benefit of workers' compensation insurance" if the disability was work-related and compensable. He continued:

> Because all of this places into question the validity of the use of your paid sick leave, if I have not received a response to this letter which satisfactorily answers the questions set forth in it, I will place you on unpaid medical leave, commencing on June 1, 1999.

Plaintiff asserted through counsel on May 28, 1999, that he had no affirmative obligation to apply for workers' compensation insurance and "[h]is entitlement to use his accrued sick leave is subject to the provisions of the state and federal family medical leave acts." In early June 1999, Defendant terminated Plaintiff's employment.

Thus, the superintendent's initial statement that he was considering recommending non-renewal of Plaintiff's contract closely followed the start of Plaintiff's medical leave. Defendant then terminated Plaintiff's employment soon after it received a letter from Plaintiff's counsel in which Plaintiff asserted his FMLA rights. A rational factfinder could infer from this

evidence that Defendant decided to dismiss Plaintiff because of his use of medical leave. The Court, therefore, denies Defendant's motion for summary judgment on Plaintiff's FMLA claim.

### III. Defendant Is Not Entitled to Summary Judgment on Plaintiff's ADA and State–Law Disability Claims

#### A. *The FDAB Decision Does Not Preclude Plaintiff's Disability Claims*

█ In his Second Claim for Relief, Plaintiff alleges Defendant violated the Americans with Disabilities Act (ADA) by terminating Plaintiff because of his disability "in that [Plaintiff's] physical and mental impairments, with reasonable accommodation, would not have prevented plaintiff from performing the essential functions of his position with defendant." Defendant argues the FDAB's decision precludes Plaintiff from pursing his ADA claim. The Court disagrees. At least two circuit courts of appeals have held that unreviewed state agency determinations should not be given preclusive effect in litigation under the ADA because that Act incorporates Title VII's provision that the EEOC gives only "substantial weight" to the findings of state administrative bodies. *See Pernice v. City of Chicago,* 237 F.3d 783 (7th Cir.2001); *Thomas v. Contoocook Valley School Dist.,* 150 F.3d 31, 39 n. 5 (1st Cir.1998). An Oregon District Court Judge has ruled similarly. *See Seatter v. Washington County,* Civ. No. 98–1585–AA, slip op. at 8–9 (D.Or. Mar. 1, 2000). This Court agrees with those holdings. Even if unreviewed agency determinations may have preclusive effect in ADA litigation, however, the FDAB decision does not preclude Plaintiff's ADA claim in this case for the same reasons it does not preclude the FMLA claim.

#### B. *There Is Evidence in the Record from which a Factfinder Could Conclude Plaintiff Was a Qualified Individual with a Disability*

█ Title I of the ADA prohibits an employer from discriminating against a "qualified individual with a disability." 42 U.S.C. § 12112(a).

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. . . .

42 U.S.C. § 12111(8). The term "disability" is defined in several ways.[3] For purposes of Defendant's summary judgment motion, the pertinent definition of disability is "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(A). The term "substantially limits" is not defined by statute, "but 'substantially' suggests 'considerable' or 'specified to a large degree.'" *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

Defendant contends Plaintiff was not disabled for purposes of the ADA. Defendant relies on Plaintiff's deposition testimony:

Q. Are you currently disabled?

MR. BROWN [Plaintiff's counsel]: I'm going to object to the form of the

---

**3.** The ADA defines "disability" as follows:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

question to the extent it calls for a legal conclusion.

Go ahead.

A. I don't believe so.

Q. One of your claims against the Canby School District is for discrimination under the Americans with Disabilities Act. Were you disabled at the time you were employed at the Canby School District?

MR. BROWN: Same objection. Go ahead.

A. No.

Q. So it's your testimony you were not disabled while at Canby?

A. Right.

This testimony does not bar Plaintiff from asserting he had a disability at the time Defendant terminated his employment. The quoted deposition questions asked for a legal conclusion Plaintiff was not qualified to give. Moreover, Plaintiff now asserts by affidavit he "did not understand that the question was intended to include the period of time that has been alleged in the legal action that has been filed on [his] behalf, February 1, 1999 through June 30, 1999, during which time [he] was absent from work on sick leave."

█ In addition, there is independent evidence in the record from which a factfinder could conclude Plaintiff had an impairment that significantly limited a major life activity. Dr. Griffin, who Plaintiff first saw on March 1, 1999, diagnosed Plaintiff with "major depression" that might last "from a few months to the balance of the patient's lifetime." Dr. Griffin further opined: "as the consequence of his condition of major depression Mr. Bourgo was substantially limited, as of the onset of his condition, in his ability to care for himself, to concentrate, to interact with others and to work." In his affidavit, Plaintiff asserts Dr. Griffin accurately described his condition. A rational factfinder could conclude from this evidence that Plaintiff had an

impairment that substantially limited him in at least the major life activity of caring for himself. *Cf. Humphrey v. Memorial Hosps. Ass'n,* 239 F.3d 1128, 1134 (9th Cir.2001) (caring for oneself is a major life activity).

Defendant also argues Plaintiff's "stress" cannot qualify as a disability for the ADA because it was "caused by his performance problems at work." Defendant cites no authority to support its contention that a mental impairment caused by working conditions cannot qualify as a disability under the ADA, and the Court is aware of none. The case upon which Defendant relies, *Weiler v. Household Fin. Corp.,* 101 F.3d 519 (7th Cir.1996), is not relevant. The *Weiler* plaintiff alleged she suffered stress and related disorders as the result of working under a particular supervisor, but she also claimed she could work for any other supervisor. *Id.* at 524–25. The Seventh Circuit concluded the plaintiff was not "substantially limited" in the major life activity of working because the plaintiff's impairment excluded her from only one position of employment. *Id.*

[W]hatever Weiler's problem was with [the supervisor], it is not recognized as a disability under the ADA. The major life activity of working is not "substantially limited" if a plaintiff merely cannot work **under a certain supervisor** because of anxiety and stress related to his review of her job performance.

Moreover, "exclusion from one position of employment does not constitute a substantial limitation of a 'major life activity.'" Rather, with respect to the major life activity of working, "substantially limits" must mean significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes. Weiler claims she can do her job, but not while being supervised by Terry Skorupka. If Weiler can do the

same job for another supervisor, she can do the job, and does not qualify under the ADA. We conclude that Weiler is not "disabled" as that term is used in the ADA.

*Id.* at 525 (citations omitted; emphasis added). *Weiler* does not support Defendant's argument that a mental impairment caused by working conditions cannot be a disability under the ADA. *Weiler* holds merely that a person whose job-related stress prevents the person only from performing a specific job under a specific supervisor is not disabled.

In this case, Plaintiff alleges he is substantially limited in at least the major life activities of caring for himself and working. Unlike the *Weiler* plaintiff, Plaintiff does not contend he is precluded merely from performing one job under a particular supervisor.[4] The opinion of Dr. Griffin, although somewhat conclusory, is evidence from which a factfinder could conclude Plaintiff was substantially limited in the major life activities of caring for himself and working. Plaintiff, therefore, is entitled to a trial on the issue whether he was "disabled" at the time of his termination.

■ Defendant also argues Plaintiff is not a "qualified individual with a disability" because his extended absence from work prevented him from performing the essential functions of his job. Defendant cites cases from other jurisdictions that hold employers are not required to provide indefinite leaves of absence as an accommodation for a disability.

Ninth Circuit precedent forecloses Defendant's argument. In this Circuit, an employer may be required to provide a leave of absence to accommodate an employee's disability. *See Humphrey*, 239 F.3d at 1135. *See also Nunes v. Wal-*

*Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir.1999). Even an extended unpaid medical leave may be a reasonable accommodation if it does not pose an undue hardship on the employer. *See Nunes,* 164 F.3d at 1247. "Determining whether a proposed accommodation (medical leave in this case) is reasonable, including whether it imposes an undue hardship on the employer, requires a fact-specific, individualized inquiry." *Id.*

In *Humphrey,* the employer argued a leave of absence would not have been a reasonable accommodation because the results of the leave were speculative. The Ninth Circuit disagreed:

> [T]he ADA does not require an employee to show that a leave of absence is certain or even likely to be successful to prove that it is a reasonable accommodation. In *Kimbro v. Atlantic Richfield Co.,* we held that a leave of absence was a reasonable accommodation for an employee whose cluster migraine headaches, a condition for which there was no specific treatment program, caused him sporadically to miss work. We noted that
>
> > [w]hile it is altogether possible that Kimbro's migraine episodes may have recurred upon his return to work following a leave of absence, such a possibility does not foreclose a finding of liability for failure to accommodate Kimbro's migraines . . . . As long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation.

---

4. The Ninth Circuit agrees with the Seventh Circuit that a plaintiff must be significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes to be substantially limited in the major life activity of working. *See Broussard v. University of California,* 192 F.3d 1252, 1255–57 (9th Cir.1999).

The statements in Dr. Jacisin's letter that Humphrey's condition was treatable and that "she may have to take some time off until we can get the symptoms better under control" are sufficient to satisfy **the minimal requirement that a leave of absence could plausibly have enabled Humphrey adequately to perform her job.**

*Humphrey,* 239 F.3d at 1136 (citations omitted; emphasis added).

In this case, the undisputed facts do not establish conclusively whether an extended leave of absence would have been a reasonable accommodation of Plaintiff's disability. First, Defendant has not shown the leave would have imposed an undue hardship, which is particularly notable in light of the fact that Plaintiff had not even exhausted his paid sick leave at the time Defendant terminated Plaintiff's employment. Second, Defendant has failed to show an extended medical leave could not plausibly have enabled Plaintiff to return to work at a later time. Defendant, therefore, is not entitled to summary judgment against Plaintiff's ADA claim.

The parties agree the Court's decision on the Oregon state disability claim should mirror the Court's decision on the ADA claim. Accordingly, Defendant's Motion for Summary Judgment on the state-law disability claim also is denied.

## IV. Defendant Is Entitled to Summary Judgment on the IIED Claim Because the Acts Defendant Allegedly Committed Do Not Rise to the Level of Socially Intolerable Conduct

■ Plaintiff's Fourth Claim for Relief is for intentional infliction of emotional distress.

Under Oregon law, the elements of the tort of intentional infliction of emotional distress are 1) the defendant intended to inflict severe emotional distress on the plaintiff; 2) defendant's acts were the cause of plaintiff's severe emotional distress; and 3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

*Meade v. Cedarapids, Inc.,* 164 F.3d 1218, 1223 (9th Cir.1999). "Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law." *Harris v. Pameco Corp.,* 170 Or.App. 164, 171, 12 P.3d 524 (2000).

The inquiry is whether defendant's conduct constitutes "extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior." "Conduct that is merely 'rude, boorish, tyrannical, churlish and mean' does not satisfy that standard[.]" A court may consider the existence of special relationships between the parties in determining the issue. An employee and employer relationship is such a relationship.

*MacCrone v. Edwards Ctr., Inc.,* 160 Or. App. 91, 100, 980 P.2d 1156 (1999) (citations omitted).

In his First Amended Complaint, Plaintiff makes the following allegations in relation to his IIED claim:

### 31.

Commencing in 1998 and continuing up through June, 1999, defendant took actions against plaintiff with respect to his employment that were clearly unlawful. Said actions included the withholding of a portion of his salary upon reassignment, threatening him with withholding of salary if he declined to apply for worker's compensation benefits and bringing dismissal proceedings against him for refusing to apply for worker's compensation benefits. After February, 1999, defendant knew that plaintiff was suffering from anxiety and

depression for which he was receiving care and treatment.

### 32.

Defendant's dismissal of plaintiff has been published by media which has exposed plaintiff to embarrassment and humiliation before colleagues, community members and prospective employers.

### 33.

Defendant engaged in the course of conduct as above alleged with intentional or reckless disregard for the likelihood that the actions toward plaintiff would cause him severe emotional distress.

### 34.

■ The conduct of defendant toward plaintiff exceeded the bounds of socially tolerable conduct and inflicted upon plaintiff severe emotional distress.

Defendant moves for summary judgment on the IIED claim on the ground "the District's acts do not constitute a transgression beyond the bounds of socially tolerable conduct." Plaintiff responds that Defendant knew plaintiff suffered from major depression and "took retaliatory actions against him." Plaintiff asserts "Oregon law has recognized that conduct that might otherwise be merely boorish can be actionable when the subject of the conduct is specially vulnerable and that condition is known to the actor."

Defendant's actions, as alleged by Plaintiff, do not constitute socially intolerable conduct for purposes of an Oregon IIED claim. In general, the type of conduct that has been the foundation of IIED claims has been far more egregious. For example, Oregon courts have permitted IIED claims to stand when employers repeatedly have belittled employees based on their race, gender, or perceived sexual orientation. *See Harris,* 170 Or.App. at 172, 12 P.3d 524 (employer repeatedly made sexu-

al remarks and initiated suggestive unwanted physical contact with the employee); *Whelan v. Albertson's, Inc.,* 129 Or. App. 501, 505–06, 879 P.2d 888 (1994) (store manager repeatedly taunted an employee with references to his perceived homosexuality in the presence of customers and coworkers); *Lathrope–Olson v. Oregon Dep't of Transp.,* 128 Or.App. 405, 407–08, 876 P.2d 345 (1994) (supervisor referred to employee as a "squaw," said "a squaw was supposed to walk behind her man," and said "all women were good for was between their legs").

In this case, there is no evidence Defendant ridiculed or belittled Plaintiff because of his disability. Instead, Plaintiff accuses Defendant of engaging in unlawful employment practices when Defendant knew Plaintiff suffered anxiety and depression. Evidence sufficient to permit a factfinder to conclude a defendant intentionally discriminated on the basis of disability is not always sufficient to support an IIED claim. *See Wheeler v. Marathon Printing, Inc.,* 157 Or.App. 290, 307, 974 P.2d 207 (1998). Something more, such as protracted abuse or public ridicule on the basis of disability, must be present. Defendant also did not engage in "socially intolerable conduct" by publishing the news of Plaintiff's dismissal. *See Trout v. Umatilla County Sch. Dist.,* 77 Or.App. 95, 103, 712 P.2d 814 (1985), *review denied,* 300 Or. 704, 716 P.2d 758 (1986).

In short, although Defendant may have exhibited insensitivity and poor judgment, and may even have unlawfully terminated Plaintiff's employment, Defendant's alleged misdeeds are not "aggravated acts of persecution that qualify as intentional infliction of emotional distress." *Trout,* 77 Or.App. at 103, 712 P.2d 814. The Court, therefore, grants Defendant's Motion for Summary Judgment as to Plaintiff's Fourth Claim for Relief.

## CONCLUSION

Defendant's Motion for Summary Judgment (# 23) is **GRANTED IN PART** and **DENIED IN PART**.

IT IS SO ORDERED.